# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRIAN K. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-CV-704-GKF-PJC |
| | ) | |
| DONALD C. YONCE, and | ) | |
| SOLARWINDS.NET, INC., | ) | |
| an Oklahoma Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N   A N D   O R D E R

This matter comes before the court on the Plaintiff's Motion to Remand [Document No. 23].

## I.   BACKGROUND

Plaintiff Brian K. Rogers ("Rogers") and defendant Yonce met in 1997 when they began working together as computer network engineers for International Network Services ("INS") in Tulsa.  In 2000, Rogers and Yonce left their employment with INS.  Rogers began working for Greenwich Technology Partners ("GTP"), and Yonce started SolarWinds, a new business providing computer network software and related maintenance and support services.  Yonce was the founder, principal or sole owner of SolarWinds, as well as SolarWinds's president or chief executive officer.

In 2001, Yonce asked Rogers to leave GTP and work for SolarWinds.  Even though Rogers's job at GTP provided a higher salary and better benefits, Rogers agreed to join SolarWinds.  Rogers claims he was persuaded to give up his more lucrative job at GTP in light of other valuable economic opportunities.  In particular, Yonce promised Rogers that, if he joined SolarWinds and helped it grow, Rogers would share in the proceeds from the projected sale of SolarWinds.  Yonce promised Rogers that when SolarWinds sold, "they would 'all' become 'millionaires.'" (Petition, ¶ 14).  Rogers claims that, based on Yonce's statements, he accepted employment at SolarWinds.

Rogers worked at SolarWinds for approximately five years, from the latter part of 2001 until December 2006.  Rogers contends that throughout the course of his employment, Younce repeatedly confirmed and renewed his promise that Rogers would receive a substantial portion of the proceeds from the sale of SolarWinds.  In or about 2005-2006, Yonce sold the majority of his ownership in SolarWinds for an alleged nine-figure sum of money and other financial remuneration.  Rogers claims that, upon the sale of SolarWinds, the defendants broke their promise to distribute proceeds of the sale to Rogers.  In addition, Rogers alleges that Yonce did not disclose the fact or terms of the sale to Rogers, but instead intentionally concealed and misrepresented these facts.

Rogers also asserts that during his employment he "regularly conceived of, developed, invented, authored, and created" numerous software programs and related computer technology in connection with SolarWinds's business, and that SolarWinds has realized significant economic profits from the works.  (Petition, ¶ 24).  Rogers alleges that he and SolarWinds are co-authors and co-owners of the software and technology he created.  Rogers claims he is entitled as a co-owner to (i) an accounting for all proceeds and profits that SolarWinds has realized from the use of the intellectual property; (ii) one-half of all profits from SolarWinds's use of the intellectual property; and (iii) a constructive trust based upon an equitable lien against one-half of the profits SolarWinds has received or will receive from the use of the intellectual property.  Rogers also contends that SolarWinds has a fiduciary duty to him to provide an accounting and to hold and pay him half the profits.

Rogers's claims of co-authorship/co-ownership of the intellectual property are based on the terms of an employment agreement entitled "SolarWinds.Net Employee Proprietary Information And Inventions Agreement."  That agreement states in part:

> Ownership of Intellectual Property. Employee hereby agrees that all Intellectual Property relating in any manner to work performed by or for the Employee as part of the performance of Employee's duties to the Company shall be owned exclusively by the Company. . . . Futhermore, and without limiting the foregoing, any such Company Intellectual Property created by Employee and related to the actual or proposed business of the Company shall be deemed "works made for hire" and the Company shall be deemed the co-author thereof.

(Agreement, p. 2, ¶ 2, attached to the Petition as Exhibit A).[1]

Based on this agreement and the allegations described above, Rogers filed this lawsuit, asserting the following nine causes of action: (1) Breach of Contract/Quasi-Contract; (2) Violation of Oklahoma Labor Protection Laws (for wrongfully inducing Rogers to change his employment through false representations and by failing to honor the employment-related promises); (3) Promissory and Equitable Estoppel; (4) Breach of Covenant of Good Faith and Fair Dealing; (5) Fraud and Constructive Fraud; (6) Constructive Trust/Equitable Lien (with respect to the sums Rogers claims to be owed form the sale of Yonce's majority interest in SolarWinds); (7) Unjust Enrichment and Accounting; (8) Breach of Fiduciary Duties and Knowingly Assisting Breach; and (9) Constructive Trust/Equitable Lien (with respect to the profits SolarWinds has received and will receive from the licensing, use or other commercial exploitation of the Rogers/SolarWinds Intellectual Property). Rogers classifies his causes of action as either employment-related claims (Counts 1 through 6), or intellectual property contract-based claims (Counts 7 through 9).

Rogers originally filed this action in the District Court for Tulsa County. Yonce removed

---

[1] Defendants point out in their response in opposition to the motion to remand that, during the course of Rogers's employment, he actually executed two agreements related to SolarWinds's intellectual property. The first agreement was signed by Rogers on October 2, 2001. The second agreement was signed by Rogers on January 19, 2005. However, the second agreement is dated September 1, 2001 and expressly supercedes all other oral or written communications or agreements concerning SolarWinds's intellectual property. Thus, for purposes of the motion to remand, the court will focus its attention on the second agreement signed in 2005, which is attached to the state court Petition and forms the basis for Rogers's claims.

the case to this court, pursuant to 28 U.S.C. § 1446(a), asserting that federal subject matter jurisdiction exists under 28 U.S.C. §§ 1338(a) and 1331 because Rogers's claims related to SolarWinds's intellectual property arise under and are preempted by the federal Copyright Act.[2] SolarWinds joined in the removal and filed a Partial Motion to Dismiss.  Yonce then filed a Motion to Dismiss.

Rogers moved to remand the action, arguing that this court lacks subject matter jurisdiction because the claims do not arise under and are not preempted by the federal Copyright Act.  Rogers contends that he has not asserted any claims for copyright infringement, *i.e.* Rogers does not allege that the defendants have unlawfully copied, distributed, reproduced, or converted the intellectual property.  Indeed, Rogers asserts that SolarWinds's use of the intellectual property is perfectly lawful and authorized.  Rogers's claims are instead centered on his purported right to share in the proceeds obtained from the use of the intellectual property.  Rogers argues that his ownership rights are derived from the written agreement between the parties, and that his claims are based on state law duties to account and share profits among co-owners of property.  Rogers argues that the Copyright Act does not provide any rights or remedies between co-authors or co-owners of joint works, nor has he not sought any remedies under the Copyright Act.

## II.  DISCUSSION

### A.  Removal Standards

Generally, a defendant may remove a case from state court to federal court only if the federal court would have had original jurisdiction over the action.  28 U.S.C. § 1441.  United States district

---

[2]  Subject matter jurisdiction rests solely on whether this court has federal question jurisdiction, as there is no diversity of citizenship.  The plaintiff and defendant Yonce are residents of Tulsa County, Oklahoma. Defendant SolarWinds is an Oklahoma Corporation.

courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.  In addition, district courts have original and exclusive jurisdiction of "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338.  A case "arises under" federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)*; see also Nicodemus v. Union Pacific Corp.,* 440 F.3d 1227, 1228 (10th Cir. 2006).

Whether a claim arises under federal law is determined by reference to the complaint alone; the existence of a potential defense based on federal law does not confer a right to remove.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar*, 482 U.S. at 392 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).  Under this rule, the plaintiff is the master of his claim.  *Caterpillar*, 482 U.S. at 392; *see also The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913).  A plaintiff may avoid federal jurisdiction by exclusive reliance on state law.  *Caterpillar*, 482 U.S. at 392.  However, a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841 (1983); *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996).

## B.   Whether a Complaint "Arises Under" the Copyright Act

"It is well-established that not every complaint that refers to the Copyright Act 'arises under' that law." *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1049 (10th Cir. 2006) (quoting *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000)).   The Second Circuit, in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), set forth the "most frequently cited test" for determining whether an action arises under the Copyright Act.   *1mage*, 459 F.3d at 1049 (citing *Gener-Villar v. Adcom Group, Inc.*, 417 F.3d 201, 203 (1st Cir. 2005)).   Under the *T.B. Harms* test, a suit arises under the Copyright Act if: (1) The complaint is for a remedy expressly granted by the Act, *e.g.*, a suit for infringement; or (2) The complaint asserts a claim requiring construction of the Act.   *1mage,* 459 F.3d 1050 (citing *Bassett*, 204 F.3d at 349, quotations omitted). The Tenth Circuit has expressly adopted the Second Circuit's approach to this "difficult jurisdictional issue" and has recognized that the *T.B. Harms* test "is essentially a reiteration of the 'well-pleaded complaint' rule."   *Id.* at 1051 (citing *Scholastic Entm't, Inc. v. Fox Entm't*, 336 F.3d 982, 986 (9th Cir. 2003)).

In reaching the decision in *T.B. Harms*, Judge Friendly undertook a detailed analysis of decisions in which the United States Supreme Court has given a narrow meaning to the language "arising under" in statutes defining the jurisdiction of federal district courts.   *See T.B. Harms*, 339 F.2d at 825-27.   Judge Friendly determined that "cases dealing with statutory jurisdiction over patents and copyrights have taken the same conservative line." *Id.* at 826.   In *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed. 513 (1912), the U.S. Supreme Court stated that "[f]ederal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy.

-6-

For courts of a state may try questions of title, and may construe and enforce contracts relating to patents. *Wade v. Lawder*, 165 U.S. 624, 627, 41 L.Ed. 852, 17 Sup.Ct.Rep. 425." *T.B. Harms*, 339 F.2d at 826.

Judge Friendly reasoned that "the federal grant of a copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *Id.* An expansive reading of the provisions conferring exclusive federal jurisdiction with respect to patents and copyrights has been disfavored and "would entail depriving the state courts of any jurisdiction over matters having so little federal significance." *Id.* While federal copyright law authorizes an assignment of a copyright by written instrument, it does not "specify a cause of action to fix the locus of ownership" of copyrights. *Id.* at 827.

### C.   Application of the *T.B. Harms* Test

With respect to the first prong of the *T.B. Harms* test, it is clear that Rogers has not brought a claim for copyright infringement and has not sought a remedy expressly granted by the Copyright Act. As noted, Rogers does not allege that the defendants have unlawfully copied, distributed, reproduced or converted the intellectual property. Rogers even states that SolarWinds's use of the intellectual property is and always has been authorized. Rogers's claims are instead focused on his rights as a purported co-owner of the intellectual property to receive an accounting and share in the proceeds derived from the works. "A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) (citations omitted). "Rather, each co-owner has an independent right to use or license the use of the copyright." *Id.* at 633 (citations omitted). "A co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright." *Id.* (citations omitted); *see*

*also Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996). Notably, federal copyright law, although recognizing jointly owned copyrights and inheritance of rights, is silent as to the law governing joint ownership. *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik*, 295 F.3d 59, 64 (1st Cir. 2002) (citing H.R. Rep. No. 94-1476, at 121, reprinted in 1976 U.S.C.C.A.N. 5659, 5736 ("There is no need for a specific statutory provision concerning the rights and duties of the co-owners of a work; court-made law on this point is left undisturbed.")).

The real issue then lies within the second prong of the *T.B. Harms* test – *i.e.* whether Rogers has asserted a claim requiring construction of the Act. Rogers argues that his claims do not require construction of the Act, because his claim of co-ownership is based on the contract between the parties, not the Copyright Act, and is therefore a matter of state contract law. As discussed above, the contract between the parties provides that all intellectual property created by Rogers relating to SolarWinds's business "shall be owned exclusively by the Company. . . shall be deemed 'works made for hire' and the Company shall be deemed the co-author thereof." The contract does not define or otherwise explain the meaning of "works made for hire" or "co-author." In addition, the contract does not incorporate or even reference the Copyright Act, although the term "works made for hire" is a term of art within the Copyright Act. The defendants argue that interpretation of the contract requires construction of the "works for hire" provision of the Act, and as a result, the second prong of the *T.B. Harms* test is satisfied. For the reasons discussed below, the court disagrees.

Cases such as this one, where the plaintiff asserts contractual and other state law claims based on ownership of a copyright, pose "among the knottiest procedural problems in copyright jurisprudence." *Bassett*, 204 F.3d at 347 (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer*

*on Copyright* § 12.01[A], at 12-4 (1999)).  "[F]ederal courts walk a fine line between usurping the power of the state courts and providing redress for copyright infringement." *1mage*, 459 F.3d at 1050, n. 7 (quoting *Scholastic Entm't,* 336 F.3d at 985-86).

In *Ausherman v. Stump*, 643 F.2d 715, 718 (10th Cir. 1981), the Tenth Circuit Court of Appeals stated that "where an action is brought on a contract either to enforce the contract, or to annul it, the action arises on or out of the contract, and not under the patent laws, even though the contract concerns a patent right."[3]  Similarly, in *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002), the court stated "if the case concerns a dispute as to ownership of a copyright, and the issue of ownership turns on the interpretation of a contract, the case presents only a state law issue." *See also Royal v. Leading Edge Products, Inc.*, 833 F.2d 1 (1st Cir. 1987) (assertions growing out of purported contract rights "arise under" state law); 13B Charles Alan Wright, et al., Federal Practice & Procedure § 3582 (A suit on a contract does not arise under the copyright laws even though a copyright may have been the subject matter of the contract, although there can be a different result if the case raises an important issue of interpretation of the Copyright Act).

The gravamen of Rogers's copyright-related claims in this case is his assertion that he is a co-owner of the computer software and other technology created during his employment at SolarWinds, and therefore he is entitled to an accounting and half the profits realized from the works.  Rogers's claim of ownership is derived solely from his alleged contractual rights.  Rogers does not base his claims on rights drawn from federal copyright laws.  As noted above, assertions growing out of contract rights generally arise under state law, even if the contract concerns a

---

[3]  The *Ausherman* decision was recognized with approval by the Tenth Circuit Court of Appeals in *1mage,* 459 F.3d 1044, 1051, fn. 9, and found to be consistent with the Second Circuit's test in *T.B. Harms*.

copyright, especially where the issue of ownership turns on the interpretation of a contract.  Here, Rogers's claims ultimately turn on the interpretation of the written employment agreement between the parties – Did the parties agree that they would be co-authors and co-owners of the work?

However, even if the case arises directly under the law of contracts, the court must still determine whether "construction" of the Copyright Act is necessary to resolve the dispute or whether the case raises an important issue of interpretation of the Act.  The contract, as noted above, states that the intellectual property "shall be deemed 'works made for hire' and the Company shall be deemed the co-author thereof."  The court agrees with the defendants that a reading of the "works made for hire" provision in the Copyright Act is helpful, if not necessary, to an understanding of this rather ambiguous contract.  For example, the Copyright Act states that copyright ownership vests initially in the author of the works.  17 U.S.C. § 201(a).  In the case of "works made for hire," however, the employer is considered the author of the works, and therefore owns all the rights comprised in the copyright, "unless the parties have expressly agreed otherwise in a written instrument signed by them." 17 U.S.C. § 201(b).  "Works made for hire" are defined as works "prepared by an employee within the scope of his or her employment."  17 U.S.C. § 101.

In short, the Copyright Act provides that an employer is considered the author and owner of "works made for hire" unless the parties otherwise agree in writing.  Here, Rogers admits that the software and technology was created during the course of his employment and are therefore considered "works made for hire."  Rogers further admits that ownership would have inured to his employer *but for* the parties' written agreement stating otherwise.  Rogers contends that the contract establishes that he and SolarWinds are co-authors and co-owners of the intellectual property.  Based on these allegations, the court finds that application of the Copyright Act to the contract barely

-10-

advances, and certainly does not resolve, Rogers's claims.  Applying the Act simply informs the court that SolarWinds and Rogers may agree in writing as to the authorship and ownership of any works created during the scope of Rogers's employment.  In fact, application of the Act reiterates that the core issue in this case is whether the parties agreed to be co-authors and co-owners of the works.  This is a matter of contract law.

The court further concludes that, under the circumstances of this case, application of the Act does not constitute "construction of the Act" within the meaning of the *T.B. Harms* test.  In reaching the second component of the *T.B. Harms* test, Judge Friendly stated that "an action 'arises under' the Copyright Act if and only if the complaint. . . asserts a claim requiring construction of the Act, **as in *De Sylva***."  *T.B. Harms*, 339 F.2d at 828 (emphasis added).  This is not a case like *De Sylva*.

*De Sylva v. Ballentine* involved a dispute over ownership of copyright renewal terms.  351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956).   The court exercised jurisdiction due to the existence of "two major questions of construction of the Copyright Act."  *T.B. Harms*, 339 F.2d at 827.  Particularly, resolution of the dispute in *De Sylva* required the court to determine (i) whether an illegitimate child is within the meaning of "children" in the copyright renewal section (then § 24) of the Copyright Act, and (ii) whether copyright renewal rights belonged exclusively to the widow of the copyright author, or were to be shared by the widow and children under § 24 of the Act.  *De Sylva*, 351 U.S. at 572-73.  Unlike the case at hand, *De Sylva* required the court to construe, not simply reference or apply, the Copyright Act and to resolve important questions of statutory interpretation.  The well-pleaded complaint in this case (and even the defenses, though irrelevant) presents no need to resolve any issues of interpretation of the Act.

The court in *Jasper v. Bovina Music, Inc.*, 314 F.3d 42 (2d Cir. 2002) considered a similar

question of jurisdiction.  Although the parties did not dispute that federal jurisdiction existed in that case, the Second Circuit Court of Appeals raised the issue *sua sponte*.  One key issue in the case was whether an agreement between the parties constituted a "writing" within the meaning of section 204(a) of the Copyright Act.  Specifically, there were questions as to (i) whether the agreement could constitute a "writing" before it was signed by the alleged copyright assignors, and (ii) whether an addendum agreeing to a contract that purported to transfer ownership of a copyright amounted to a "writing" within section 204(a).

The court in *Jasper* held that the questions under the federal Copyright Act were sufficient to invoke federal jurisdiction.  In reaching its holding, the court was careful to point out that the case was a "rare contract interpretation case" that presented "a substantial issue as to whether the contract qualifies as a section 204(a) writing."  314 F.3d at 47.  The court stated that "[i]n most cases, there will be no doubt that the contract is a section 204(a) writing, and the only substantial issue will be contract interpretation."  *Id*.  The court warned that "almost every case involving contract interpretation, appropriate for state court determination, could be recharacterized as a case appropriate for a federal court simply by framing the issue to be whether the disputed contract qualified as a writing within the meaning of section 204(a)."  *Id*.  However, the need for interpretation of a contract does not necessarily mean that there is a bona fide issue as to whether the contract constitutes a writing.  *Id*.  Unlike this case, *Jasper* was a "rare" contract interpretation case that presented a substantial and bona fide issue under the Act.  *Id*.  Applying the well-pleaded complaint rule, the present case does not raise a substantial and bona fide question under the Copyright Act.

Finally, the court notes that the parties have referenced numerous decisions concerning

disputes over ownership interests in copyrighted work and federal question jurisdiction.  This court has carefully reviewed the authorities and finds they are consistent with the court's conclusion in this case.  The initial appearance of conflict among those cases – as some courts determined federal question jurisdiction existed and others did not – is explained by classifying the cases as either (i) those in which the plaintiff's purported ownership rights in copyrighted work were derived under the Copyright Act itself, or (ii) those in which the plaintiff's ownership rights were derived from a contract.  Generally, those falling within the first category were found to arise under the Copyright Act and confer federal question jurisdiction.  Those within the second category were determined to not arise under the Act, but instead were found to arise under state contract law, and do not confer federal question jurisdiction.  As demonstrated above in *Jasper*, however, there is an exception in the second category of cases where an important question of copyright law is present.

In *Estate Examinations Co., Inc. v. ECG Enterprises, Inc.*, 2006 WL 3248003 (E.D.N.Y. Nov. 7, 2006), the court determined that it lacked subject matter jurisdiction and remanded the case to state court.  The court stated that "though the facts alleged in the complaint state that the source code was created as a 'work made for hire,' plaintiff argues it is entitled to the source code under the contract, not as a co-author or co-owner under the 'work for hire' doctrine." 2006 WL 3248003, at *3 (emphasis added).  The plaintiff relied exclusively on the contract in an effort to establish ownership.  *Id.*

In *RBM Technologies, Inc. v. Lash*, 2004 WL 1809867 (D. Mass. Aug. 13, 2004), the plaintiff, RBM, brought suit against its former employee, Lash, alleging breach of an employment agreement.  One paragraph of the agreement states that any work performed by Lash would be the exclusive property of RBM.  Lash claimed the contract was void because RBM failed to fulfill

certain conditions precedent to its taking effect, and as a result, he is the rightful owner of the copyright to a software program he developed.

The court remanded the case to state court, concluding that the case did not assert federal question jurisdiction. 2004 WL 1809867, at *1. The court reasoned that "[a]lthough RBM's breach of contract claim is related to copyright law insofar as the contract RBM alleges Lash breached purportedly allocated ownership of a copyrighted program, this is not enough to satisfy the 'arising under' requirement." *Id.*, citing *Royal v. Leading Edge Prods.*, 833 F.2d 1, 2 (1st Cir. 1987). The court, applying the Second Circuit's *T.B. Harms* test, stated that "the crux of RBM's claim is whether a valid contract existed between the parties and whether Lash breached that contract." 2004 WL 1809867, at *3.  "If, after resolving the essential contract issue, the state court finds it necessary to examine federal copyright law to resolve the dispute, it would certainly be within the court's purview to do so." *Id.* (citations omitted).

The *RBM* court rejected Lash's arguments that the complaint required construction of the Copyright Act with respect to issues of authorship and/or co-authorship, work-made-for-hire, derivative works and the "federally-granted rights to reproduce copyrighted work and to prepare derivative works therefrom." *Id*. at *4. Notably, in rejecting this argument, the court discussed *Cuisinarts Corp. v. Appliance Sci. Corp.*, 1991 WL 329470 (D. Conn. Oct. 30, 1991). In *Cuisinarts*, the plaintiff alleged that its former employees misappropriated trade secrets related to the design of a coffeemaker. The defendants claimed ownership in the design under the joint-author provisions of the Copyright Act. In *Cuisinarts*, there was no contract governing ownership; rather, ownership of the design depended on federal copyright principles, and whether the design constituted "works-for-hire." Contrary to *Cuisinarts*, the plaintiff in *RBM* sought (and plaintiff in this case) ownership

-14-

pursuant to the provisions of a contract.

In *Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996), the plaintiffs sought a declaration that they were co-owners of the copyright to a song and requested an accounting of royalties.  The plaintiffs also alleged copyright infringement, as well as a host of common law and state law claims.  The court determined that federal subject matter existed, stating:

> Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law. . . copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself.  Because disposition of this case involves the application and interpretation of the copyright ownership provisions. . . federal jurisdiction is proper.

92 F.3d at 55 (citations and quotations omitted).  The plaintiffs in *Merchant* did not have any contractual rights to ownership; rather, ownership rights were derived solely from the co-author provisions of the Copyright Act.  Contrary to *Merchant*, Rogers's purported rights as a co-owner are derived solely from the contract, and not from the Copyright Act.

In *Goodman v. Lee*, 78 F.3d 1007, 1011-12 (5th Cir. 1996), the plaintiff claimed she co-authored a song and sued for an accounting and payment of her share of the royalties from the song.  The court held that jurisdiction was proper because the plaintiff sought to establish co-authorship under the Copyright Act, which necessitated interpretation of the ownership provisions of the Act.  There was no contract in *Goodman*, and the plaintiff's rights were asserted purely a matter of statutory law.

The defendants in this case rely heavily on *Barnhart v. Federated Dept. Stores, Inc*., 2005 WL 549712 (S.D.N.Y. March 8, 2005) as establishing jurisdiction.  In *Barnhart*, the court denied the plaintiff's motion to remand because the plaintiff alleged that he was the sole author of

copyrighted songs and that the songs were not "works for hire."   The complaint required interpretation of the ownership provisions of the Copyright Act.   However, the plaintiff alleged no contractual right to co-ownership or co-authorship, but instead claimed ownership of the copyrighted works under the provisions of the Act.   Indeed, the court recognized this distinction, stating "[t]his is not a case where the plaintiff contends that he has been assigned rights from another person who was the author."   2005 WL 549712, at *3.

Defendants also rely on *GH, LLC v. Curtin*, 422 F.Supp.2d 994 (N.D. Ind. 2006), where the court declined to remand the case, finding the plaintiff explicitly requested relief that, if granted, would require a court to determine which works are "works made for hire" under the Copyright Act and which are not.  422 F.Supp.2d at 997.  Again, *GH* is distinguishable because it involves claims made directly under the Copyright Act.  It does not involve a claim for ownership of copyrights pursuant to contract.

As demonstrated by the cases cited above, a complaint asserting ownership rights pursuant to a contract is generally one arising under state law and lacking federal question jurisdiction.  Here, Rogers's claim for ownership is based solely on the written agreement between the parties.  Rogers does not assert any authorship or ownership rights under the Copyright Act.  As such, resolution of the dispute ultimately turns on an interpretation of the agreement of the parties, rather than interpretation of statutory provisions.

The court concludes that, under the special circumstances of this case, the *T.B. Harms* test is not satisfied and the case does not "arise under" federal copyright law.

### D.  Preemption

As another basis for federal jurisdiction, the defendants contend that federal copyright law

preempts the plaintiff's claims for unjust enrichment and constructive trust.  Preemption does not necessarily confer removal jurisdiction, since it is generally a defense and, as such, it does not appear on the face of a well-pleaded complaint.  *Briarpatch Limited, L.P., v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304 (2d Cir. 2004) (*citing Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).  "A defense that relies on. . . the pre-emptive effect of a federal statute will not provide a basis for removal."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

However, while federal question jurisdiction is ordinarily determined by the "well-pleaded complaint" rule whereby courts look only to the face of the complaint to determine if there are federal claims, there is an exception to this rule if the "complete preemption" doctrine applies.  The complete preemption doctrine serves to "recharacterize a state law claim. . . as an action arising under federal law" and "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005) (quoting *Metro. Life*, 481 U.S. at 64-65).  Complete preemption occurs when a particular area has been completely pre-empted by Congress and any civil complaint raising this select group of claims is necessarily federal in character.  *Metro. Life*, 481 U.S. at 64-65.

The United States Supreme Court has narrowly construed the doctrine of complete preemption and expressly recognized its application in only three areas: (1) claims alleging a breach of a collective bargaining agreement that fall under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; (2) claims for benefits or enforcement of rights under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et. seq.*; and (3) claims against a national bank chartered under the National Bank Act.  *See Beneficial*, 539 U.S. at 6-7, 10.

The Supreme Court has never extended the doctrine of complete preemption into the copyright field, and there is disagreement among circuits as to whether the doctrine is applicable to copyright claims.  The Second, Fourth and Sixth Circuits have held that complete preemption applies in copyright cases, *Briarpatch*, 373 F.3d at 304-05; *Ritchie*, 395 F.3d at 286-87; *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993), whereas the Third Circuit and district courts within the Fifth Circuit have rejected complete preemption in the copyright context. *See Bd. of Chosen Freeholders of County of Burlington v. Tombs,* 215 Fed. Appx. 80, 82 (3rd Cir. 2006)(unpublished decision); *American Airlines, Inc. v. Biztraveldeals.com*, 2008 WL 818536, at *3 (N.D. Tex. March 26, 2008); *Crooks v. Certified Computer Consultants, Inc.*, 92 F.Supp.2d 582, 587 (W.D. La. 2000).

The Tenth Circuit has not adopted complete preemption with respect to the federal Copyright Act, and at least two district courts within the Tenth Circuit have rejected the notion.  *Black v. Kos*, 2005 WL 4564587, at *2 (D. N.M. March 29, 2005)(recognizing lack of consensus among the circuits and stating that "the Tenth Circuit is ***not*** among the circuits that have revised their approach to conclude that federal Copyright Act 'completely preempts' state law")(emphasis in original); *Steward Software Co., LLC v. Kopcho*, 2007 WL 4578330, at * (D. Colo. Dec. 27, 2007)(stating the Tenth Circuit, in an unpublished decision *Okla. Nat. Gas Co. v. LaRue*, 1998 WL 568321, at *13 (10th Cir. Sept. 1, 1998), "appears to subscribe to the theory that state law causes of action unrelated to copyright law are not preempted merely because a copyrighted work is the subject matter of the suit"), *but see Western States Pathology, Inc. v. Ruffdogs, Inc.*, 2007 WL 196839, at *3 (D. Colo. Jan. 19, 2007) (discussing complete preemption doctrine with approval but remanding on other grounds)).  The district court for the District of Utah has applied the complete preemption doctrine

in a removed copyright case.  *Customs & Classics v. Bonneville Street Rods, LLC*, 2007 WL

1601483 (D. Utah June 4, 2007).

This court need not determine whether the complete preemption doctrine extends to the

Copyright Act.  Even if complete preemption applied to the Copyright Act, district courts have

federal question jurisdiction only over state law claims actually preempted by the Act.  *Briarpatch*,

373 F.3d at 305.  The instruction and effect of section 301 of the Act is that not every case that

potentially involves copyright laws is preempted.  *Dorsey v. Money Mack Music, Inc.*, 304

F.Supp.2d 858, 867 (E.D. La. 2003) (citations omitted).  As discussed below, a state law claim will

not be preempted if it is qualitatively different from a copyright infringement claim.  In this case,

federal question jurisdiction does not exist because plaintiff's state law claims are qualitatively

different from and not preempted by the federal Copyright Act.

The Copyright Act states:

> [A]ll legal or equitable rights that are equivalent to any of the
> exclusive rights within the general scope of copyright as specified by
> section 106 in works of authorship that are fixed in a tangible
> medium of expression and come within the subject matter of
> copyright as specified by sections 102 and 103, whether created
> before or after that date and whether published or unpublished, are
> governed exclusively by this title.

17 U.S.C. § 301(a).  However, the Copyright Act does not preempt any claims alleging "activities

violating legal or equitable rights that are not equivalent to any of the exclusive rights within the

general scope of copyright as specified by section 106."  17 U.S.C. § 301(b)(3).  State law claims

are preempted if: "(1) the work is within the scope of the 'subject matter of copyright' as specified

in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any

exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."  *Gates Rubber*

*Co. v. Bando Chemical Indus.*, Ltd., 9 F.3d 823, 847 (10th Cir. 1993); *see also Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985).

The intellectual property at issue here is within the scope of the "subject matter of copyright." Computer software is considered "literary work" under the Copyright Act and is subject to copyright if it is an original work of authorship fixed in any tangible medium of expression. *Gates Rubber*, 9 F.3d at 839. However, the court concludes that the rights granted under state law with respect to Rogers's claims for unjust enrichment and constructive trust are not equivalent to the exclusive rights granted within section 106.

Section 106 provides that the owner of a copyright has the exclusive right to (1) reproduce or copy the work; (2) prepare derivative works; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly. If a state cause of action requires an element beyond copying, adaptation, performance, distribution or display, "then the state cause of action is qualitatively different from and not subsumed within a copyright infringement claim and federal law will not preempt the state action." *Harolds Stores, Inc. v. Dillard Department Stores, Inc*., 82 F.3d 1533, 1543 (10th Cir. 1996) (citing *Gates Rubber*, 9 F.3d at 847). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display" for preemption to occur. *Briarpatch*, 373 F.3d at 305 (citations omitted). If the state law claim requires an element *instead of* or *in addition to* the elements of a copyright infringement claim, the state law claim is not preempted. *Rosciszewski*, 1 F.3d at 229-230 (citations omitted, emphasis added).

Rogers does not seek to enforce any rights under section 106. He is not alleging that the defendants engaged in any wrongful use of the intellectual property, nor do his state law claims rely upon such acts of infringement. Rogers's claims seek remedies related to his purported contractual

-20-

status as a co-author and co-owner, which is not within the purview of the Act.  Accordingly, the court concludes that Rogers's claims are qualitatively different from and not subsumed within a copyright infringement claim.  Therefore, the claims are not preempted by the Copyright Act.

In analyzing preemption, courts often compare the elements of a copyright right infringement claim with the state law claims asserted.  *Harolds Stores,* 82 F.3d at 1544.  The court may consider what must be proven for each claim to determine whether the state law claim is "qualitatively distinguishable" from the protection afforded under copyright law.  *Id.*  A claim for copyright infringement requires proof of two elements: (1) plaintiff was the owner of a valid copyright; and (2) defendant copied protected components of the copyrighted material.  *Chalfant v. Tubb*, 453 F.Supp.2d 1308, 1317 (N.D. Okla. 2006) (citing *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 Led.2d 358 (1991)).

Here, the claims for unjust enrichment and constructive trust are not equivalent to a claim for copyright infringement because the elements of copyright infringement are not present in Rogers's claims.  A claim for unjust enrichment under Oklahoma law requires a plaintiff to prove "enrichment to another coupled with a resulting injustice."  *Teel v. Pub. Serv. Co. of Okla.*, 767 P.2d 391, 398 (Okla. 1985).  The defendants assert that an unjust enrichment claims is essentially the same as a constructive trust claim.  The primary reason for a constructive trust is the avoid unjust enrichment.  *Easterling v. Ferris*, 651 P.2d 677, 681 (Okla. 1982).  Rogers alleges the defendants were unjustly enriched by refusing to distribute the proceeds as co-owners, not by their use of the works.  In other words, Rogers's claims of unjust enrichment and constructive trust require elements *"instead of"* those of a copyright infringement claim.  *Rosciszewski*, 1 F.3d at 229-230.

The court notes that unjust enrichment claims in copyright cases are often found to be

preempted.  However, the unjust enrichment claim here is not based on copyright infringement, and therefore the cases cited by the defendants are distinguishable.  *Ehat*, 780 F.2d 876 (unjust enrichment claim preempted where plaintiff alleged injury from the defendants' unauthorized reproduction and sale of copyrighted literary material); *Chalfant*, 453 F.Supp.2d at 1321 (claim for unjust enrichment based solely on economic gain from violating plaintiffs' copyright may be preempted); *Briarpatch*, 373 F.3d at 306 (unjust enrichment claim preempted where plaintiffs alleged defendants turned novel into motion picture without permission and plaintiffs sought to enforce is their rights under section 106(2)); *Daboub v. Gibbons*, 42 F.3d 285 (5th Cir. 1995) (claims preempted where the core theories of recovery were wrongful copying, distributing, and performance of the lyrics of a song).  Notably, the court in *Dorsey v. Money Mack Music, Inc.*, 304 F.Supp.2d 858, 865 (E.D. La. 2003), determined that the plaintiff's claim for unjust enrichment was not preempted because it arose from breaches of contractual and fiduciary duties.

**WHEREFORE**, this court lacks subject matter jurisdiction and the Plaintiff's Motion to Remand [Document No. 23] is granted.  The Court Clerk is directed to remand this case to the District Court in and for Tulsa County, Oklahoma.  The court hereby declines to require payment of costs pursuant to 28 U.S.C. § 1447(c), as defendant Yonce's removal was based upon a colorable claim of federal subject matter jurisdiction.

**IT IS SO ORDERED** this 21st day of July 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma